David Michael JONES, Appellant–
Petitioner,

v.

STATE of Indiana, Appellee–
Respondent.

No. 48A04–0109–PC–406.

Court of Appeals of Indiana.

Sept. 12, 2002.

Transfer Granted Dec. 3, 2002.

David M. Jones, Michigan City, IN, Appellant, Pro Se.

Steve Carter, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

RILEY, Judge.

*STATEMENT OF THE CASE* [1]

Appellant–Petitioner, David Michael Jones (Jones), appeals the adverse judg-

ment on his petitions for post-conviction relief.

We affirm in part and reverse in part.

*ISSUES*

Jones raises seven (7) issues for our review, which we consolidate and restate as follows:

1. Whether the State presented sufficient evidence to support Jones' convictions for false informing and intimidation.

2. Whether the trial court properly ordered Jones to serve consecutive sentences.

3. Whether the trial court properly awarded Jones pretrial detention credit.

*FACTS AND PROCEDURAL BACKGROUND*

The facts which follow reveal a series of events that occurred over several months in 1997.[2] On April 17, 1997, Officer Trent Chamberlin (Chamberlin) of the Anderson Police Department was dispatched to 1515 Pendleton Avenue, Anderson, Indiana, in reference to a property damage accident involving a car and a pickup truck. When Chamberlin arrived at the scene, he spoke first with the driver of the car, Jones. Jones told Chamberlin that Stoney Dobbs (Dobbs), the driver of the pickup truck, chased Jones down an alley to the intersection of 20th Street and Morton Street, where Dobbs rammed his pickup truck into the back of Jones' car.

---

1. Jones filed three separate appeals under three different cause numbers following the denial of his petitions for post-conviction relief. This court denied a motion to consolidate the three cases. However, upon further review, we have chosen to address all three causes in one opinion that is being filed under each individual cause number.

2. Jones' Statement of the Facts does not comply with Ind. Appellate Rule 46(6) in that it fails to cite to the record and is clearly argumentative. Indiana law is well settled that a litigant proceeding pro se will be held to the same rules of procedure as trained legal counsel. *Brademas v. St. Joseph County Com'rs,* 621 N.E.2d 1133, 1135 (Ind.Ct.App. 1993).

Chamberlin then spoke with Dobbs, who told the officer that the impact at 20th and Morton Streets was actually the second collision between Dobbs' pickup and Jones' car, the first collision having occurred in the parking lot of a diner located at 1515 Pendleton Avenue, a few short blocks away. According to Dobbs, he was attempting to park his pickup at the diner when Jones "backed up his car at a high rate, ran into [Dobbs'] truck, and then took off down the alley." (September 24, 1997 Tr. p. 24). Dobbs chased Jones down the alley in an attempt to stop him. Dobbs said the vehicles traveled a short distance in this manner until they arrived at the intersection of 20th and Morton Streets, where Jones suddenly stopped his car and ran into Dobbs a second time. Chamberlin spoke next with the passengers in each vehicle; their versions of what had transpired supported those of their respective driver.

Because of the limited space provided on the accident reporting form, Chamberlin decided to condense the disparate witness accounts of the two (2) collisions into one (1) accident, located at 1515 Pendleton Avenue. He believed that his report was consistent with the actual events, as reported by all witnesses, because of the proximity of the two (2) collision sites and the similarity of the damage done to both vehicles both times.[3]

On April 18, 1997, Jones went to Chamberlin's police station to obtain a copy of the accident report for his insurance company and discovered the manner in which Chamberlin had written the accident report. Jones demanded that Chamberlin change the accident report to reflect that the accident had occurred at 20th and Morton Streets. Chamberlin informed Jones that he would not change the report from the way it had been filed because it

was correct as written. At this point, Jones became irate and started arguing with Chamberlin. This behavior drew the attention of other officers at the station, who overheard their conversation.

On April 21, 1997, the State filed an information against Jones for false informing, a Class A misdemeanor, Ind.Code § 35–44–2–2(c). The information alleged that Jones "unlawfully g[a]ve false information to an officer, regarding his involvment [sic] in a property damage accident." (Amended Brief of Appellant, Exhibit A). Jones was arrested on May 19, 1997, and entered a plea of not guilty the same day. Jones was released while awaiting trial.

On June 11, 1997, Jones and Dobbs were involved in another incident. Dobbs left his house in Anderson, Indiana, to drive to church. Driving down the street, Dobbs noticed his former wife, Brandy, sitting in a parked car with Jones. After Dobbs drove past, Brandy and Jones pulled behind him and followed him down Columbus Street and onto 38th Street. After the intersection of 38th and Main Streets, Jones pulled his car alongside Dobbs' car. At that point, Brandy threw something at Dobbs' car and said that she would "see the kids dead before [Dobbs] get 'em." (September 24, 1997 Tr. p. 44). Additionally, Jones pulled out a gun, pointed it into the air, and said to Dobbs, "I'm just gonna kill ya." (September 24, 1997 Tr. p. 44). Thereafter, Jones and Brandy drove away.

On June 12, 1997, the State filed an information in the Anderson City Court charging Jones with intimidation, a Class A misdemeanor, Ind.Code § 35–45–2–1, and an arrest warrant was issued the following day. Jones was eventually arrested on July 1, 1997. At the time of his arrest, he had in his possession several

---

**3.** Jones did not include a copy of the accident report in the Appellant's Appendix.

baggies of marijuana. Hence, when Jones was arraigned the following day on the intimidation charge, he was also arraigned for possession of marijuana, a Class A misdemeanor, I.C. § 35–48–4–11. Jones was then held without bond while awaiting his trial on all three (3) pending misdemeanor charges.

Following a bench trial on September 24, 1997, Jones was found guilty on each charge. Jones received a one (1)-year sentence at the Indiana Department of Correction on each count. The sentence for intimidation was ordered to run consecutive to the sentence for false informing, while the sentence for possession of marijuana was ordered to run consecutive to the sentence for intimidation. Jones received pretrial detention credit on the false informing charge from July 2, 1997, following his arrest for intimidation and possession, until his sentencing date.

Jones failed to timely file a direct appeal. On October 6, 1998, Jones filed a Motion for Trial de Novo. The trial court summarily denied the motion on October 7, 1998, because it had not been filed in accordance with Ind. Trial De Novo Rule 3.[4] On October 16, 1998, Jones filed a Verified Petition for Permission to File Belated Appeal that claimed a timely appeal had not been filed due to the trial court's failure to respond to previously filed notices and requests. The trial court denied Jones' request for belated appeal on October 20, 1998, claiming that the court's records did not indicate that Jones had filed anything with the trial court between December 31, 1997, and October 6, 1998—the date the Motion for Trial de Novo was filed.

On June 21, 1999, Jones filed three (3) Petitions for Post–Conviction Relief, which the post-conviction court set for hearing on July 30, 1999. On July 30, 1999, the post-conviction court, noting that Jones had failed to appear and finding the issues moot, denied his motions. On August 16, 1999, Jones filed Motions to Clarify and for Rehearing. The post-conviction court denied those motions on December 1, 1999.

On April 27, 2001, Jones filed a Successive Post–Conviction Relief Petition, alleging that the post-conviction court had failed to rule on his 1999 petitions. This court reviewed the successive petition and on June 12, 2001, ordered the post-conviction court to take one (1) of two (2) courses of action. First, if it had already ruled on the 1999 petitions, it was to file a copy of those rulings with the Clerk of the Indiana Court of Appeals within thirty (30) days. If not, this court ordered the post-conviction court to rule on the petitions and send a certified copy to the Clerk within thirty (30) days.

On July 16, 2001, the post-conviction court denied Jones' petitions and filed its rulings with the Clerk. As a result, we determined that Jones' Successive Post–Conviction Relief Petition was filed prematurely and dismissed it without prejudice to Jones' right to appeal the post-conviction court's July 16, 2001 order in the normal fashion under the Indiana Rules of Appellate Procedure. Jones now appeals. Additional facts will be provided as needed.

## DISCUSSION AND DECISION

### I. Standard of Review

▮ An action for post-conviction relief is a special quasi-civil remedy where a

---

4. Indiana Trial De Novo Rule 3 gives a defendant the opportunity to request a trial de novo in a circuit or superior court following a trial in city court for a misdemeanor. However, the request must be filed with the clerk of the circuit court within fifteen (15) days of the sentencing hearing. Ind. Trial De Novo Rule 3(B)(1).

party can raise an error that, for various reasons, was either unavailable or unknown at the time of the original trial or appeal. Ind. Post–Conviction Rule 1(1); *Long v. State*, 679 N.E.2d 981, 983 (Ind.Ct. App.1997). "[G]enerally an issue that was available but not raised on direct appeal is waived at the post-conviction hearing." *State v. Eubanks*, 729 N.E.2d 201, 205 (Ind.Ct.App.2000). To apply, however, waiver must be asserted as an affirmative defense to the post-conviction petition. *Mickens v. State*, 596 N.E.2d 1379, 1381 (Ind.1992). Because the State did not raise the defense of waiver here, we proceed to review the merits of Jones' petition. *Eubanks*, 729 N.E.2d at 205. As the party seeking post-conviction relief, Jones has the burden of establishing grounds for relief by a preponderance of the evidence. *Long*, 679 N.E.2d at 983. To prevail, Jones must show that the evidence is without conflict and leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Spranger v. State*, 650 N.E.2d 1117, 1119 (Ind.1995), *reh'g denied.*

## II. Sufficiency of the Evidence

■ Jones contends that his convictions for false informing and intimidation are not supported by the evidence. In reviewing sufficiency claims, this court does not reweigh the evidence or judge the credibility of the witnesses. *Smith v. State*, 660 N.E.2d 357, 359 (Ind.Ct.App. 1996). We will consider only the evidence most favorable to the verdict, together with all reasonable and logical inferences to be drawn therefrom. *Id.* The verdict will be affirmed if there is substantial evidence of probative value to support the conclusion of the trier of fact. *Id.* Reversal is warranted only when reasonable per-

sons would be unable to form inferences as to each material element of the offense. *Id.*

### A. False Informing

■ The offense of false informing is established when the evidence shows that a person "gives false information in the official investigation of the commission of a crime, knowing the report or information to be false." I.C. § 35–44–2–2(c)(1). Although normally a Class B misdemeanor, the offense becomes a Class A misdemeanor "if it substantially hinders any law enforcement process." *Id.*

In his Amended Brief,[5] Jones claims that he "alledged [sic] all along that this accident started at the end of the alley at 20th St. not 1515 Pendleton Ave." (Appellant's Amended Br. p. 3). Jones supports this assertion with a lengthy discussion that cites only the evidence favorable to his position. Such an argument improperly invites us to reweigh the evidence and judge the credibility of the witnesses, neither of which we may do in conducting our review. *Smith*, 660 N.E.2d at 359. Moreover, in determining the sufficiency of the evidence, we may only consider the evidence favorable to the conviction. *Id.* Thus, we find Jones' argument unpersuasive.

Moreover, the record clearly demonstrates that Jones gave several different versions of the events surrounding the accident. At trial, Chamberlin testified that he spoke with Jones at the scene of the accident, at which time Jones claimed there had been just one (1) collision occurring at 20th and Morton Streets. Chamberlin testified further that on the following day, at the police station, Jones gave several different accounts of the accident,

---

**5.** Jones filed an initial Appellant's Brief on December 4, 2001. He subsequently moved to file an Amended Brief, which we granted on December 28, 2001.

eventually admitting to the collision at the diner.

Specifically, on direct examination, Chamberlin stated:

Q. So on the next day, which would have been April 18th [Jones] gave you two (2) different versions of how the accident happened?

A. Yes, sir.

. . .

Q. Who was there?

A. Sergeant Christian, Captain Hanlon, and Front Desk Officer Tony Johnson.

Q. . . . your capacity as an officer investigating, uh, this accident, when Mr. Jones gave you these dis'—different versions?

A. Yes, sir. There were—the day that he came to the station, he was confronted numerous times about where the original accident occurred. Several times, at the beginning of the questioning, he continued to state that the accident happened at 20th and Morton. Each time he was confronted with different fact[s], he would change the story a little bit. It was modified three (3) or four (4) times before he finally admitted that there even was an accident occurring at the diner. Then, once he admitted to that, he changed his story two (2) more times before he stated that Mr. Dobbs had run into him, and he did not—still denied that he would—originally had backed into Mr. Dobbs' truck.

(September 24, 1997 Tr. p. 22). Sergeant Christian, who testified that he overheard Jones change his story several times, corroborated Chamberlin's testimony regarding Jones' conflicting statements at the police station. Thus, there was ample evidence demonstrating that Jones gave several different accounts of the events surrounding the accident. Because of these conflicting versions, all of which could not be true, it was reasonable for the trial court to conclude that at least one (1), if not more, of Jones' statements were false.

The timing of Jones' false statements also does not affect the validity of the conviction. Jones argues that he could not be convicted of false informing as a Class A misdemeanor because that "involves an ongoing criminal investigation, not merely a discrete criminal report," citing to *Howell v. State*, 684 N.E.2d 576 (Ind.Ct.App. 1997). (Appellant's Br. at 9). Jones reasons that Chamberlin's investigation concluded when he filed the official accident report and, thus, there was no longer an ongoing investigation for Jones to impede.

Jones' argument is without merit. The salient fact is not, as Jones submits, whether the Anderson Police Department knew that he was lying prior to completing its accident report, but whether Jones made false statements to Chamberlin during the course of his investigation. The above facts demonstrate that, on the day of the accident, Jones denied that there had been a collision at the diner, while the next day he admitted that there had been. This evidence establishes that his statements to the contrary at the scene of the accident were false. The State also submitted evidence, unrefuted by Jones, that the conflicting stories Chamberlin received delayed his processing of the accident scene. Chamberlin's testimony sufficiently establishes the elements of false informing. *See Webb v. State*, 266 Ind. 554, 556 364 N.E.2d 1016, 1018, (1977) ("[A] conviction may be sustained by the uncorroborated testimony of a single witness.").

Furthermore, Jones' reliance on *Howell, supra,* is misplaced. Howell was a passenger in a car that was stopped by the police for having crossed the center line. The driver of the car was arrested for driving

with a suspended driver's license. Because the police officer suspected underage drinking, he then inquired as to Howell's identity. Howell gave the officer a false name. When the police established his real identity, and the fact that there were several active warrants for his arrest, they arrested him under the warrants and also for false informing. On appeal from his conviction for false informing, Howell argued that there was no ongoing criminal investigation when he lied about his name because the driver of the car had already been arrested. We disagreed, stating: "The officer made a valid traffic stop and was reasonably inquiring into the circumstances. We conclude that at the time Howell was being questioned, the officer was engaged in the official investigation of the commission of a crime." [6] *Howell,* 684 N.E.2d at 578.

We find the same circumstances here. Chamberlin was conducting an official investigation into the events surrounding one (1) or more collisions between Jones' car and Dobbs' truck. Although Officer Chamberlin at first was under the impression that he was merely to investigate a routine property damage accident, after arriving at the scene and speaking with the drivers and witnesses, he could have developed a reasonable belief that one (1) or more of the drivers had engaged in a crime such as criminal mischief.[7] See *id.* (noting that an officer may develop a reasonable belief that a crime was committed during an investigation). In speaking to Jones, the officer learned that Dobbs chased his car down an alley where Dobbs rammed his pickup truck into the back of Jones' car. In speaking with Dobbs, the officer discovered that Jones had run his car into Dobbs' truck at the diner and "took off" down the alley. After Dobbs chased Jones, Jones stopped suddenly and ran into Dobbs' vehicle a second time. Based upon the intentional conduct described by both drivers, the officer developed a reasonable belief that he was investigating more than a mere traffic accident and possibly a crime.

Moreover, although his investigation did not conclude with the filing of any criminal charges arising from this vehicular altercation, that does not alter the nature of Chamberlin's investigation. Nor does it matter, as we observed in *Howell,* that the investigation conclude with the entry of charges against Jones arising from the collisions. *Id.* Thus, we find that sufficient evidence of probative value exists to support Jones' conviction for false informing as a Class A misdemeanor.

### B. Intimidation

■ Jones argues that the State failed to present sufficient evidence to convict him of intimidation as a Class A misdemeanor. The elements of intimidation are enumerated at I.C. § 35–45–2–1(a), the relevant portion of which reads:

(a) A person who communicates a threat to another person, with the intent that:

(1) the other person engage in conduct against his will; or

---

6. Although *Howell* did not define the term "crime," the term is defined in Ind.Code § 35–41–1–6 (1998) as a "felony or misdemeanor." As the term's definition applies throughout Title 35, it is reasonable to conclude that the term "crime" as used in the false informing statute means a felony or misdemeanor. *See* Ind.Code § 35–41–1–3 (1998) ("The definitions in [Chapter 1] apply throughout this title and to all other statutes relating to penal offenses.").

7. A person commits criminal mischief, as a Class B misdemeanor, if he "recklessly, knowingly, or intentionally damages or defaces property of another person without the other person's consent." Ind.Code § 35–43–1–2(a)(1)(1998).

(2) the other person be placed in fear of retaliation for a prior lawful act; commits intimidation, a Class A misdemeanor.

In *Casey v. Indiana,* 676 N.E.2d 1069, 1072 (Ind.Ct.App.1997), we stated that "the State has the burden to show, among other things, that the defendant threatened the victim with the intent that she be placed in fear of retaliation for a prior lawful act." Jones insists that there was no evidence pertaining to a prior lawful act by Dobbs. We disagree.

The State presented evidence that Dobbs had children by Brandy, that he had visitation rights with those children, and that Jones' behavior was in retaliation for his exercising those rights. Specifically, the State elicited the following testimony from Dobbs:

Q. Okay. What did they do? Pull up next to you?

A. Uh, yes! They pulled up, uh, next to me and, uh, my ex-wife threw somethin' at my car and said she see [sic] the kids dead before I get 'em. And, uh, and then I slowed down. He pulled a gun on me. And said, "I'm just gonna kill ya."

. . .

Q. Were you placed in fear for your safety at that point?

A. Yes, I was!

. . .

Q. Okay. Were you in fear of being harmed by Mr. Jones for exercising visitation with your children?

A. Uh, yes!

(September 24, 1997 Tr. pp. 44–5). This evidence, alone, establishes that Jones' threatening behavior was in response to Dobbs' exercising his lawful visitation rights. *See Lyles v. State,* 576 N.E.2d 1344, 1347 (Ind.Ct.App.1991) ("[T]he uncorroborated testimony of a victim is sufficient to sustain a conviction.").

As stated above, Jones' conviction for intimidation will be affirmed if there is substantial evidence of probative value to support the conclusion of the trier of fact. *Smith,* 660 N.E.2d at 359. We find that the record contains sufficient evidence demonstrating that Jones threatened Dobbs to place him in fear of retaliation for exercising his lawful visitation rights with his children.

## II. Consecutive Sentences

### A. False Informing

■ Jones argues that the trial court erred by ordering his sentence for false informing to run consecutive to two (2) other unrelated sentences entered the same day. The record indicates, however, that the sentence for false informing, being the first of the three (3) sentences entered that day, was not ordered to be run consecutive to any other sentence. Specifically, the trial court stated at sentencing as follows:

As to Cause Number 9704–CM–2404, False Informing, A Class "A" Misdemeanor: cause submitted, evidence heard. Defendant found guilty. Twenty-five (25) and costs, year at the DOC, indigent, to start from 07/02/97.

(September 24, 1997 Tr. p. 79). As there was no order for this sentence to run consecutive to any others, Jones has failed to raise a viable issue.

### B. Intimidation

■ Jones also argues that the trial court improperly ordered his sentence for intimidation to run consecutive to his sentence for false informing. Jones fails to explain his claim other than to state that

he was "never out on Bond." (Appellant's Brief p. 6).

In its Order, the post-conviction court found: "[A]t the time of defendant's arrest under this cause, the defendant had been released on [h]is own recognizance and was awaiting trial for charges under Case No. 48H02–9704–CM–002404 [false informing]; therefore, the terms of imprisonment for the crimes ran consecutively pursuant to Indiana Code." (Appellant's App., P–C Intimidation Order p. 5).[8] We afford much deference to the post-conviction court's findings of fact, and will disturb such findings only if clearly erroneous. *Bivins v. State,* 735 N.E.2d 1116, 1126 (Ind.2000). We have reviewed the record and find that the evidence supports the post-conviction court's finding that Jones had been released on his own recognizance pending trial on the false informing charge at the time of his arrest for intimidation on July 2, 1997.[9] At the May 19, 1997 initial hearing on the false informing charge, the trial judge, after setting Jones' trial date, noted that the "warrant will be withdrawn" and warned Jones that the court would "hold" him if he did not notify the court of any further address changes. (May 19, 1997 Tr. p. 4). Thus, the post-conviction court's finding is not erroneous. ▪

 Although Jones' argument merely, and inadequately, attacks the factual basis relied on by the trial court to impose consecutive sentences, we will nonetheless review the legality of the trial court's sentencing order since it is our duty to "correct sentencing errors, *sua sponte,* if necessary." *Dickson v. State,* 624 N.E.2d 472, 474 (Ind.Ct.App.1993).

Moreover, we do not grant deference to the post-conviction court's conclusions of law. *Bivins,* 735 N.E.2d at 1126.

 We begin our review by acknowledging, "[t]rial courts, in the absence of express statutory authority, cannot order consecutive sentences." *Kendrick v. State,* 529 N.E.2d 1311 (Ind.1988). In Indiana, express statutory authority for consecutive sentences is found at I.C. § 35–50–1–2, which states, in pertinent part:

(c) Except as provided in subsection (d) or (e), the court shall determine whether terms of imprisonment shall be served concurrently or consecutively. The court may consider the aggravating and mitigating circumstances in IC 35–38–1–7.1(b) and IC 35–38–1–7.1(c) in making a determination under this subsection. The court may order terms of imprisonment to be served consecutively even if the sentences are not imposed at the same time. However, except for crimes of violence, the total of the consecutive terms of imprisonment, exclusive of terms of imprisonment under IC 35–50–2–8 and IC 35–50–2–10, to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the presumptive sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted.

(d) If, after being arrested for one (1) crime, a person commits another crime:

(1) before the date the person is discharged from probation, parole, or a

---

8. Because Jones failed to properly number the pages in his Appellant's Appendix, as required by Ind. Appellate Rule 51(C), we can only cite to the document itself, and not to its location in the appendix.

9. There appears to be a discrepancy between the CCS and Officer Tevis' testimony as to whether the arrest warrant for intimidation was served on July 1, 1997 or July 2, 1997. *Compare* CCS Intimidation p. 1 *with* September 24, 1997 Tr. p. 5. Nevertheless, the discrepancy does not change our analysis.

term of imprisonment imposed for the first crime; or

(2) while the person is released:

 (A) upon the person's own recognizance; or

 (B) on bond;

the terms of imprisonment for the crimes shall be served consecutively, regardless of the order in which the crimes are tried and sentences are imposed.

■ As indicated under subsection (c), the trial court has the discretion to order consecutive sentences. Subsection (d), however, requires consecutive terms of imprisonment under certain circumstances. "If one is arrested for one crime, and commits another crime while being released either on the person's own recognizance or on bond, consecutive sentencing is mandatory." *Garner v. State*, 646 N.E.2d 349, 351 (Ind.Ct.App.1995). Additionally, we conclude that the mandatory language of I.C. § 35–50–1–2(d) applies to misdemeanors as well as felonies. As used throughout Title 35, "crime" means a felony or a misdemeanor. *See* I.C. § 35–41–1–6; I.C. § 35–41–1–3.

The trial court's order requiring Jones to serve his sentence for intimidation consecutive to his sentence for false informing falls squarely within the purview of I.C. § 35–50–1–2(d)(2). As noted above, Jones had been released on his own recognizance awaiting trial on the false informing charge at the time he committed intimidation. For these reasons, we find no error by the post-conviction court in upholding the trial court's order requiring Jones' sentence for intimidation to run consecutive to his sentence for false informing.

### C. Possession of Marijuana

■ Jones also contends that the trial court incorrectly ordered his sentence for possession of marijuana to run consecutive to his sentence for intimidation. The sentencing order of September 24, 1997 reveals that this was in fact what had occurred. "As to Cause Number 9707–CM–4023 [possession of marijuana]: Cause submitted, evidence heard. Defendant found guilty. Twenty-five (25) and costs, year at the DOC consecutive with 9706–CM–3601 [intimidation]." (September 24, 1997 Tr. p. 80). Jones argues this was error because he "was never out on Bond on any of the counts," and that he "was arrested on the same day July 2, [19]97 on all counts of the mistormenors [sic] and felonys [sic] without being on Bond on any count." (Appellant's Brief p. 5).

Initially we note that Jones' contention, that he was arrested on all of the misdemeanors on July 2, 1997, is simply not supported by the evidence. As noted above, Jones had previously been arrested and arraigned on the false informing charge and released on his own recognizance when he committed the intimidation and possession of marijuana. Thus, in its July 16, 2001 order entered on Jones' petition, the post-conviction court explained that it had found Jones' argument concerning consecutive sentences to be without merit because "at the time of [Jones'] arrest under [the possession and intimidation charges], the defendant had been released on [h]is own recognizance and was awaiting trial for charges [for false informing]; therefore, the terms of imprisonment for the crimes ran consecutively pursuant to Indiana Code." (Appellant's App., P–C Possession of Marijuana Order p. 5).

While the post-conviction court's finding, that Jones had been released on his own recognizance on the false informing charge when he committed intimidation and possession of marijuana is supported by the evidence, it does not support the court's

conclusion that the sentence for possession must be served consecutive to his sentence for intimidation. The relevant facts show that Jones committed intimidation on June 11, 1997 and was arrested for that crime on July 1, 1997, or July 2, 1997, the same day the marijuana was discovered on Jones' person. However, Jones had not yet been tried for intimidation and, therefore, could not have been on probation, parole, or serving a term of imprisonment for that first crime as Section (d)(1) requires. *See Newsome v. State*, 654 N.E.2d 11 (Ind.Ct.App.1995), *trans. denied* (stating that for Section (d)(1) to apply a defendant must be on probation, parole or serving a term of imprisonment for the first crime and rejecting the notion that Section (d)(1) applies if a defendant has merely been arrested on the first crime when the second crime is committed). Additionally, although Jones had been released on his own recognizance on the false informing charge when he was found in possession of marijuana, he was not out on bond or released on his own recognizance on the intimidation charge. In fact, the probable cause warrant issued for the intimidation charge was not served until July 1, 1997 and, thereafter, Jones was held without bond. Thus, consecutive sentences were not mandated by Section (d)(2). Therefore, Jones has demonstrated that the evidence leads to a conclusion opposite that reached by the post-conviction court. Consequently, Jones' sentence is revised such that he is required to serve concurrent sentences for intimidation and possession which shall run consecutive to his sentence for false informing.

### III. Pretrial Detention Credit

■ For his final issue, Jones asserts that the trial court failed to credit his sentences for intimidation and marijuana possession with the same pretrial detention credit applied to his sentence for false informing. While the trial court ordered Jones' sentence for false informing to begin running from the date of his pretrial detention on July 2, 1997, the trial court did not make the same adjustments to Jones' intimidation or possession of marijuana sentences. Jones claims that this constitutes error.

■ Indiana inmates imprisoned awaiting trial or sentencing earn Class I credit. I.C. § 35–50–6–4(a). "A person assigned to Class I earns one (1) day of credit time for each day he is imprisoned for a crime or confined awaiting trial or sentencing." I.C. § 35–50–6–3(a). Thus, we have previously acknowledged that "Indiana Code Section 35–50–6–3 sets forth in no uncertain terms that a person confined awaiting trial or sentencing is statutorily entitled to one day of credit for each day he is so confined; therefore, pre-sentence jail time credit is a matter of statutory right, not a matter of judicial discretion." *Weaver v. State*, 725 N.E.2d 945, 948 (Ind.Ct.App. 2000).

■ Jones' statutory right to credit time is not unlimited, however. As we stated in *Stephens v. State*, 735 N.E.2d 278, 284 (Ind.Ct.App.2000):

It is well-settled that where a person incarcerated awaiting trial on more than one charge is sentenced to concurrent terms for the separate crimes, IC 35–50–6–3 entitles him to receive credit time applied against each separate term. However, where he receives consecutive terms he is only allowed credit time against the total or aggregate of the terms.

*Id.*

As indicated above, the trial court properly ordered Jones' sentences for intimidation and possession to run consecutive to his sentence for false informing. While Jones has a statutory right to receive cred-

it for his pretrial detention, he received that credit against his sentence for false informing. Thus, while Jones should have been ordered to serve his sentences for intimidation and possession concurrently, he is not entitled to credit against them as to do so would impermissibly award him double credit. *See Simms v. State*, 421 N.E.2d 698, 702 (Ind.Ct.App.1981) ("[W]e conclude there is no basis for the proposition that the legislature could have contemplated "extra" or "double" credit to a convicted felon under these circumstances."). Thus, we find that Jones did not meet his burden of demonstrating clear error by the post-conviction court.

## CONCLUSION

Based on the foregoing, we affirm the post-conviction court's orders upholding Jones' convictions for false informing and intimidation. We also affirm the post-conviction court's decision to uphold the mandatory consecutive sentences with regard to the intimidation and false informing charges and the award of pretrial detention credit. However, we must conclude that with regard to the order requiring that his sentence for possession of marijuana be served consecutive to his sentence for intimidation, Jones has demonstrated that the evidence leads to a conclusion opposite that reached by the post-conviction court. *Spranger*, 650 N.E.2d at 1119. Therefore, we order his sentence for possession to run concurrent to his sentence for intimidation and remand for all just and proper relief.

Affirmed in part and reversed in part.

VAIDIK, J., concur.

MATTINGLY–MAY, J., dissents with separate opinion.

MATTINGLY–MAY, Judge, dissenting.

The record does not reflect that any false information Jones provided was in the context of an official criminal investigation. Therefore, I must respectfully dissent as to Jones' conviction of false informing.

The offense of false informing is committed when a person "gives false information *in the official investigation of the commission of a crime*, knowing the report or information to be false." Ind.Code § 35–44–2–2(c)(1) (emphasis added). The state presented no evidence at trial that there was ever any investigation, official or otherwise, of the commission of a crime in connection with the motor vehicle accidents involving Jones and Dobbs on April 17, 1997.

When the State filed its information against Jones, the information alleged that Jones "unlawfully [gave] false information to an officer, regarding his involvment [sic] in *a property damage accident.*" (Amended Brief of Appellant, Exhibit A.) (emphasis added). The State's charging information said nothing about the commission of a crime. It does not appear from the record that any charges other than false informing were filed against Jones as a result of the April 17, 1997 auto accidents.

In his testimony at trial, Officer Chamberlin referred repeatedly to the incidents of April 17, 1997 as an "accident" and of his making an "accident report." (Tr. at 20–27.) In his questioning of Chamberlin, the prosecutor repeatedly asked about the officer's investigation of an accident. *Id.* Neither man ever mentioned any investigation of the commission of a crime.

I cannot agree with the majority's assertion that Officer Chamberlin developed a reasonable belief that he was investigating more than a mere traffic accident and possibly a crime. I am unwilling to say

that a police officer is engaging in the investigation of a crime every time he or she responds to a call involving a motor vehicle accident.

I am also unwilling to base a conviction upon mere speculation that a police officer was engaged in the official investigation of a crime when no evidence supports that an official investigation was ever undertaken. Matters outside the record cannot be considered by this court on appeal. *Zapffe v. Srbeny*, 587 N.E.2d 177, 180 (Ind.Ct.App. 1992), *reh'g denied, trans. denied.* We must decide each case on the record before us and cannot speculate as to the actual facts of a case. *Id.* Upholding Jones' conviction of false informing requires us to speculate as to whether Officer Chamberlin was involved in an official investigation, as there is no direct evidence in the record to support that inference. I would therefore reverse Jones' conviction of false informing.

I concur as to all other counts.