**Timothy J. CLANCY, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 45A05–0405–CR–272.**

Court of Appeals of Indiana.

June 15, 2005.

Transfer Denied Aug. 11, 2005.

---

Mitchell D. Kreiter, Thomas A. Gibbons, Kreiter & Gibbons & Assoc., Chicago, IL, William Brown, Jr., Law Office of Jack Friedlander, Hammond, for Appellant.

Steve Carter, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

BARNES, J.

### Case Summary[1]

Timothy Clancy appeals his convictions for Class D felony criminal recklessness, Class A misdemeanor criminal recklessness, Class B misdemeanor false informing, and Class C infraction driving left of center. We affirm in part and reverse in part.

### Issues

Clancy raises the following issues:

I. whether there is sufficient evidence to support his criminal recklessness convictions; and

II. whether there is sufficient evidence to support his false informing conviction.

III. whether, during trial, the State violated his Fifth Amendment right to remain silent; and

IV. whether he received ineffective assistance of trial counsel.

### Facts

The evidence most favorable to the convictions reveals that on May 27, 2002, Clancy was awakened at 3:00 a.m. at his home in Hebron because he needed to go to Chicago for business purposes. Clancy owns a guard dog business, and he was informed that there was a report of a burglar on the premises of a property patrolled by some of his dogs. After driving to the Chicago address and helping police apprehend and process the burglar, Clancy and his son, Joshua, then sixteen years old, left to return home at about noon.

At approximately 1:00 p.m., Clancy was driving his pickup truck eastbound on U.S. 231 in Lake County when it was observed traveling in the wrong lane of traffic for

several hundred feet. One driver whom Clancy almost hit saw that Clancy was asleep behind the wheel. Soon thereafter, Clancy's truck came upon two motorcyclists, Dianna and Robert Goad. Robert swerved to one side of the road and managed to avoid being hit. Dianna, however, was struck and suffered severe injuries, including severance of her left leg at the knee. When Clancy exited his truck and approached Dianna, he said "What have I done?" Tr. p. 86. Several witnesses, including the Goads, indicated that Clancy was the driver of the truck. Clancy, however, told the police officer investigating at the scene that Joshua, not Clancy, had been driving.

The State charged Clancy with two counts of criminal recklessness, one as a Class A misdemeanor for driving Robert off the road and one as a Class D felony for causing serious bodily injury to Dianna. The State also charged Clancy with false informing, a Class B misdemeanor, and driving left of center, a Class C infraction. At trial, the State relied upon testimony that Clancy was sleeping at the time of the accident as the evidence of his recklessness. Clancy maintained that Joshua, not he, was driving the truck at the time of the accident. Joshua was not called to testify. The State, during its case-in-chief, also made some reference to Clancy's failure to talk to police during later stages of their investigation into the accident. The jury found Clancy guilty on all four counts, and he now appeals.

### Analysis

#### I. Sufficiency of the Evidence— Criminal Recklessness

■ Clancy first argues that the State presented insufficient evidence to support his two criminal recklessness convictions.

---

1. We hereby deny Clancy's motion for oral argument.

"It is the task of finders of fact, juries or judges, to determine in the first instance whether the evidence in a particular case adequately proves the elements of an offense." *Davis v. State,* 813 N.E.2d 1176, 1178 (Ind.2004). When a defendant contends on appeal that the State presented insufficient evidence to sustain a conviction, we neither reweigh the evidence nor judge the credibility of witnesses, and we affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.* "Nevertheless, evidence of guilt of substantial and probative value, as required to affirm a conviction, requires more than a mere scintilla of evidence." *Whitaker v. State,* 778 N.E.2d 423, 425 (Ind.Ct.App.2002), *trans. denied.*

■ A person commits Class A misdemeanor criminal recklessness if he or she recklessly, knowingly, or intentionally performs an act, by use of a motor vehicle, that creates a substantial risk of bodily injury to another person. Ind.Code §§ 35–42–2–2(b) & (c). The offense is a Class D felony if a person recklessly, knowingly, or intentionally inflicts serious bodily injury on another person. I.C. § 35–42–2–2(d). The State has never contended that Clancy acted knowingly or intentionally; the dispute here is whether he acted recklessly. "A person engages in conduct 'recklessly' if he engages in conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct." I.C. § 35–41–2–2(c). As has been observed in the context of reckless homicide, proof that an automobile accident

"arose out of the inadvertence, lack of attention, forgetfulness or thoughtfulness of the driver of a vehicle, or from an error of judgment on his part," is not sufficient evidence of recklessness. *Whitaker,* 778 N.E.2d at 425 (quoting *Beeman v. State,* 232 Ind. 683, 690, 115 N.E.2d 919, 922 (1953)).

■ The State here relied at trial and relies on appeal on evidence that Clancy was asleep behind the wheel at the time of the collision with Dianna as proof of his recklessness. No Indiana case has previously addressed, within the context of criminal law, whether proof of a driver's falling asleep and thus causing a wreck is sufficient evidence of recklessness. This court, however, has held in the tort law context that the mere fact a driver fell asleep behind the wheel and caused an accident is not, by itself, sufficient evidence of willful or wanton misconduct. *See Brooks v. Bloom,* 151 Ind.App. 312, 279 N.E.2d 591 (1972). As we observed, "The act of falling asleep at the wheel of an automobile, standing alone, is generally held to permit, at most, an inference of negligence." *Id.* at 314, 279 N.E.2d at 592. If the driver has had some prior warning as to the likelihood of falling asleep but continues to drive, such may be considered willful or wanton misconduct for purposes of the Indiana Guest Statute.[2] *Id.* We acknowledged, "one ordinarily does not fall asleep without some premonitory symptoms or signals." *Id.* at 316, 279 N.E.2d at 594. Continuing to drive while such signals exist, however, is not by itself enough to prove willful or wanton misconduct. Instead, "there must be a showing that the [driver] has manifestly disregarded the warnings of impending sleep to such a degree that his conduct typifies either in-

**2.** The Guest Statute immunizes a driver from liability for an accident to passengers in the driver's vehicle who are close relatives of the driver or hitchhikers, unless the driver was operating the vehicle in a willful or wanton manner. I.C. § 34–30–11–1.

tentional injury or a conscious defiance of the probable result." *Id.* at 316–17, 279 N.E.2d at 594. In the end, we held that the mere fact the driver fell asleep, in combination with the passenger's one warning to the driver before the accident that he was veering toward the side of the road, was not prima facie evidence of willful or wanton misconduct on the driver's part. *Id.* at 319–20, 279 N.E.2d at 595–96.

■ We conclude that although *Brooks* is a civil case, the rule announced there should fully apply here. The general definition given to willful and/or wanton misconduct is in vital respects similar to the criminal law definition of recklessness. It has been stated that wanton or willful misconduct requires a host-driver to (1) be conscious of her misconduct, (2) be motivated by *reckless indifference* for the safety of her guest, and (3) know that her conduct subjects her guest to a probability of injury.[3] *Duncan v. Duncan,* 764 N.E.2d 763, 767 (Ind.Ct.App.2002), *trans. denied.* Our supreme court has also approved of describing willful or wanton misconduct as either (1) an intentional act done with *reckless disregard* of the natural and probable consequence of injury to a known person under the circumstances known to the actor at the time; or (2) an omission or failure to act when the actor has actual knowledge of the natural and probable consequence of injury and his opportunity to avoid the risk. *Witham v. Norfolk and Western Ry. Co.,* 561 N.E.2d 484, 486 (Ind.1990) (citing *McKeown v. Calusa,* 172 Ind.App. 1, 5, 359 N.E.2d 550, 553–54 (1977)). Given the similarities between the definitions of willful or wanton misconduct and recklessness, we cannot discern a valid reason for adopting a lesser standard of proof for imposing liability on a sleeping driver in the criminal context than is required in the civil context.

■ We also note that the *Brooks* formula is consistent with cases from other jurisdictions that have addressed the standard of proof required to impose criminal liability for recklessness, rather than ordinary negligence, on a driver who fell asleep behind the wheel. For example, in *Hargrove v. Commonwealth,* 10 Va.App. 618, 394 S.E.2d 729 (1990), the Virginia Court of Appeals reversed the involuntary manslaughter conviction of a person who ran over a pedestrian after falling asleep behind the wheel. In order to support the conviction, the Commonwealth was required to prove "negligence so gross, wanton, and culpable as to show a *reckless disregard* of human life." *Id.* at 730 (quoting *Tubman v. Commonwealth,* 3 Va.App. 267, 348 S.E.2d 871, 873 (1986)) (emphasis added). The court held this standard was not met where the only evidence was that the defendant knew he was "extremely tired" after working the night shift before driving home. *Id.* at 731–32. The court stated, "If Hargrove had been operating his vehicle for a number of hours in a tired and sleepy condition, or while in such a state undertook a trip of such a substantial distance or time that he should have known he might fall asleep, the evidence might support a finding that he was acting in reckless disregard for human life." *Id.* at 731. The court also distinguished an earlier case that had upheld a conviction for reckless driving where the driver had fallen asleep and caused an accident, *Kennedy v. Commonwealth,* 1 Va.App. 469, 339 S.E.2d 905 (1986), because there was evidence there that the defendant knew he was fatigued and sleepy and had been driving several hours in that condition be-

---

**3.** Although this language specifically refers to a host-driver's liability to his or her guest-passenger, the definition of "willful or wanton misconduct" that it provides is still informative in cases involving third parties.

fore the accident. *Id.* Thus, *Hargrove* and *Kennedy* indicate, as does *Brooks,* that merely falling asleep while driving is insufficient evidence of recklessness. Instead, there must be some proof that the driver consciously ignored, for a period of time, substantial warnings that he or she might fall asleep, and continued to drive despite the warnings, before actually falling asleep and causing an accident.

There is no such evidence in the present case. Even viewing all of the evidence in a light most favorable to the State, the most it establishes is that Clancy fell asleep while driving. There is no evidence that he consciously ignored substantial premonitory symptoms of impending sleep. Although Clancy had been awakened at 3:00 a.m. to drive from Hebron to Chicago, and thus had been up for a number of hours before the accident at 1:00 p.m., Clancy also testified without contradiction that he had been asleep for approximately six hours before he was awakened. Thus, there is no evidence that he was sleep-deprived at the time of the accident. There is no evidence that Clancy was dozing off intermittently before the accident, nor that anyone observed other erratic driving by him before he crossed the center line on U.S. 231 for several hundred feet and struck Dianna.[4] There is no evidence that he had been driving for an inordinate length of time before the accident.

The State directs us to evidence presented at trial that Clancy was a diabetic and had had very little to eat or drink[5] between 3:00 a.m. and 1:00 p.m. as proof that he consciously disregarded a risk that

his blood sugar may drop precipitously low and cause him to lose consciousness. At trial, the State presented no evidence or testimony, expert or otherwise, on the extent or type of Clancy's disease, the risks of not eating for a long period of time with respect to Clancy or someone like him, or whether Clancy would have been aware of any such risk. We decline to rely on this scant evidence regarding Clancy's diabetes to support a finding of recklessness on his part. In sum, there is insufficient evidence of criminal recklessness on Clancy's part; the mere fact that he fell asleep behind the wheel is not sufficient.

■ We note that negligent driving generally is not a basis for imposing criminal liability in Indiana, no matter how tragic the result. *See Whitaker,* 778 N.E.2d at 428. Regardless of whether Clancy may have been negligent, there is insufficient evidence that he engaged in criminal recklessness. We reverse his two convictions for criminal recklessness.

## II. Sufficiency of the Evidence— False Informing

■ Clancy also contends there is insufficient evidence to support his false informing conviction. As charged by the State here, a person is guilty of false informing if he or she gives false information in the official investigation of the commission of a crime, knowing the information to be false. I.C. § 35–44–2–2(d)(1). The State's case was predicated on Clancy's falsely telling an investigating police officer who arrived on the scene immediately after the accident that Joshua, not he, was

---

4. We have previously observed that briefly and accidentally crossing a center line will not support a finding of recklessness, although intentionally crossing a center line may do so. *See Whitaker,* 778 N.E.2d at 427 n. 3 (comparing *Hergenrother v. State,* 425 N.E.2d 225, 228 (Ind.Ct.App.1981) (affirming

reckless homicide conviction) and *DeVaney v. State,* 259 Ind. 483, 493–94, 288 N.E.2d 732, 738–39 (1972) (reversing reckless homicide conviction)).

5. Clancy had had a Diet Coke at around noon.

driving the truck at the time of the crash. Clancy does not challenge the jury's factual determination that he gave false information about who was driving the truck, but does argue that there was no "official investigation of the commission of a crime" at that time and, therefore, he cannot be guilty of false informing.

Under the facts present here, we disagree with Clancy. This court has held that a conviction for false informing may be upheld if a defendant knowingly makes false statements to a police officer investigating his or her reasonable belief that a crime may have been committed, even if it ultimately turns out that the suspected crime was not committed. *See Howell v. State,* 684 N.E.2d 576, 578 (Ind.Ct.App. 1997). In this case, police responded to an accident scene involving serious bodily injury and a vehicle that had traveled in the wrong lane for a considerable distance before striking a motorcycle. Particularly given the severity of the accident and evidence that a traffic code violation (crossing the center line) had caused it, police officers had a reasonable belief that a crime might have been committed; Clancy was required to answer their questions truthfully regarding who was driving the truck. It is immaterial to the false informing charge that there ultimately was insufficient evidence to convict Clancy of criminal

recklessness with respect to the accident. *See id.*

■ We do wish to emphasize our belief that not every police investigation into an automobile collision may be characterized an "official investigation of the commission of a crime" for purposes of the false informing statute. Many such incidents will not qualify as an "investigation" simply because police are merely taking information, tending to any obvious physical injuries, and performing the ministerial functions they are charged with doing. Consistent with that belief, we also note that the facts of this case provide a much more compelling basis for affirming a false informing conviction than were present in *Jones v. State,* 774 N.E.2d 957 (Ind. Ct.App.2002).[6] There, the majority affirmed a false informing conviction where the defendant allegedly gave false information to a police officer investigating a property damage automobile accident. *Id.* at 960, 963. There was no evidence in the record that any official investigation was undertaken into the possibility that the accident could have involved criminal conduct. *See id.* at 970 (Mattingly–May, J., dissenting).

Here, by contrast, such official investigation did take place. This crash resulted in serious bodily injury, not mere property

---

**6.** The procedural history of *Jones* is odd. Jones had filed three post-conviction relief petitions in Anderson City Court, and three separate appeals from the denial of these petitions, each bearing a separate appellate cause number, were taken. We issued three simultaneous and identical opinions, one for each appellate cause number, affirming in part and reversing in part. *See Jones v. State,* 774 N.E.2d 957 (Ind.Ct.App.2002); *Jones v. State,* 775 N.E.2d 322 (Ind.Ct.App.2002); *Jones v. State,* 777 N.E.2d 1 (Ind.Ct.App.2002). Each opinion addressed all of Jones' claims related to the post-conviction relief petitions. Transfer was sought and granted by our supreme court, but only as to the appellate cause number in the opinion reported at 777 N.E.2d 1. Transfer was neither sought nor granted in the other two cause numbers. Our supreme court ultimately held that petitions for post-conviction relief cannot be filed in city or town courts, and remanded with instructions to the Anderson City Court to dismiss Jones post-conviction relief petitions. *See Jones v. State,* 789 N.E.2d 478, 481 (Ind.2003). Thus, although transfer technically was not sought in our other two *Jones* opinions and they were not vacated, it would not appear that they should be considered valid precedent. We discuss the facts in *Jones* nevertheless to illustrate what we conclude should fall outside the false informing statute.

damage or slight injury, and was caused by a vehicle that several witnesses had seen driving in the wrong lane for a considerable distance. The police officers were not fully aware of the facts at the time of the investigation at the scene of the accident, and in fact continued their investigation away from the scene. As a result, they could not be 100% certain at that time whether a crime had been committed, and because of the continuing investigation, this should not preclude a false informing conviction. Reading the false informing statute to allow convictions only if police officers are positive a crime has been committed would undoubtedly encourage the cover-up of crimes, by deceit and lying in situations where police suspect, but cannot be certain, that a crime has been committed. Public policy and the interests of justice are not served if that conduct occurs. We affirm Clancy's false informing conviction.

### III. Fifth Amendment Right to Silence

■ Clancy raises two further issues that are relevant to his remaining false informing conviction.[7] His first contention is that the State violated his Fifth Amendment right to silence when, during its case-in-chief, it questioned a police officer regarding Clancy's failure to contact the officer to provide his version of the accident while the investigation was ongoing but before Clancy was charged. Clancy moved for a mistrial on this basis, which the trial court denied. It would appear that the State was treading on thin ice, but we conclude reversal of Clancy's conviction is not required.

■ The issue here involves pre-arrest, pre-*Miranda* silence on Clancy's part. There is slightly less concern over the use of such silence by the prosecution

as opposed to post-*Miranda* silence. Specifically, while the use of post-*Miranda*, post-arrest silence by the prosecution against a defendant is generally forbidden, pre-arrest silence may be used to impeach the credibility of a defendant who chooses to testify on his own behalf. *Yurina v. State*, 474 N.E.2d 93, 96 (Ind.1985). As Clancy points out, however, the testimony he objected to was presented during the State's case-in-chief before he elected to testify and, therefore, is difficult to view as "impeachment" evidence, which would occur during cross-examination of Clancy (as did occur here) and/or rebuttal testimony. Reference to Clancy's pre-arrest silence during the State's case-in-chief was, at best, highly dubious, and the State proceeds at its peril in such situations. *See Ouska v. Cahill–Masching*, 246 F.3d 1036, 1047–48 (7th Cir.2001).

■ We conclude the trial court did not err in denying Clancy's motion for a mistrial. The specific question and answer that prompted the mistrial motion, and which Clancy challenges on appeal, was "Did Mr. Clancy give you a statement?", to which the police officer replied "No." Tr. p. 535. After discussion at sidebar, the trial court denied Clancy's mistrial motion but did admonish the jury as follows:

> As to the last question and answer that was given, I'm instructing you to disregard that from any or all consideration in this case. I'm also going to advise you and remind you as I did in the very beginning of this trial, that the entire burden of proof is on the State of Indiana, period.

*Id.* at p. 539. "A mistrial is an extreme remedy that is warranted only when less severe remedies will not satisfactorily cor-

---

7. With respect to the finding that Clancy committed the infraction of driving left of center, constitutional protections afforded to criminal defendants do not apply in civil infraction proceedings. *See Wirgau v. State,* 443 N.E.2d 327, 330–31 (Ind.Ct.App.1982).

rect the error." *Banks v. State*, 761 N.E.2d 403, 405 (Ind.2002). "Reversible error is seldom found when the trial court has admonished the jury to disregard a statement made during the proceedings because a timely and accurate admonition to the jury is presumed to sufficiently protect a defendant's rights and remove any error created by the objectionable statement." *Alvies v. State*, 795 N.E.2d 493, 506 (Ind.Ct.App.2003), *trans. denied.* We presume the trial court's timely and accurate admonishment in this case cured any error in the State's elicitation of Clancy's pre-arrest silence during its case-in-chief. He is not entitled to reversal on this issue.

## IV. Ineffective Assistance of Counsel

 Clancy's final contention is that his trial counsel was ineffective because he failed to call Joshua as a witness at trial to corroborate Clancy's claim that Joshua was driving at the time of the accident. A defendant claiming ineffective assistance of trial counsel must satisfy two components. "First, the defendant must show deficient performance: representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *McCary v. State*, 761 N.E.2d 389, 392 (Ind.2002) (citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Second, the defendant must show prejudice: a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.* "We afford great deference to counsel's discretion to choose strategy and tactics, and strongly presume that counsel provided adequate assistance and exercised reasonable professional judgment in all significant decisions." *Id.* In most cases, "[a] decision regarding what witnesses to call is a matter of trial strategy which an appellate court will not sec-

ond-guess ...." *Brown v. State*, 691 N.E.2d 438, 447 (Ind.1998).

In the direct appeal rather than post-conviction relief context, we do not have the benefit of extra-record evidence that might shed light on trial counsel's decision not to call Joshua as a witness. We speculate, however, that there are a number of reasonable and inherently strategic and tactical reasons why he might not have done so. Joshua might have invoked his Fifth Amendment right to silence if called to testify. Perhaps trial counsel had interviewed Joshua and came to the conclusion that he would not be an effective witness for the defense for whatever reason. Perhaps, indeed, Joshua would not have testified that he was driving at the time of the accident. In sum, Clancy has failed to establish that trial counsel's decision not to call Joshua as a witness was an egregious error that fell below an objective standard of reasonableness. Clancy did not prove he received ineffective assistance of counsel.

### Conclusion

The State did not present sufficient evidence of recklessness on Clancy's part to support his two convictions for criminal recklessness. It did present sufficient evidence of false informing, and Clancy's claims of Fifth Amendment error and ineffective assistance of counsel do not warrant reversal of this conviction. We affirm the false informing conviction and driving left of center finding and reverse the two criminal recklessness convictions.

Affirmed in part and reversed in part.

MAY, J., concurs.

DARDEN, J., concurs and dissents with opinion.

DARDEN, Judge, concurring in part and dissenting in part.

I concur as to Issues I, III, and IV. With respect to Issue II, I respectfully dissent.

It has long been the law in Indiana that criminal statutes are "strictly construed against the State." *Sunday v. State,* 720 N.E.2d 716, 719 (Ind.1999); *see also e.g., Fahnestock v. State,* 102 Ind. 156, 1 N.E. 372, 377 (1885). We look to the "plain, ordinary, and usual meaning of the language unless the statute itself provides a contrary meaning." *Sunday,* 720 N.E.2d at 718.

The statute defines the offense of false informing as the giving of "false information in the official investigation of the commission of a crime, knowing the information to be false." Ind.Code § 35–44–2–2(d)(a). Thus, as I read the statute, the law enforcement officer must have been conducting "an official investigation of the commission of a crime" in order for the provision of "false information" to constitute the offense. *Id.* Here, the record indicates that the responding officers were investigating an accident and had no indicia of criminal activity at the time Clancy was questioned. Because the officer was not conducting an "official investigation of the commission of a crime" at the time Clancy informed the officer that Joshua was driving, I would reverse Clancy's conviction in that regard.