Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 18 2013, 7:12 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**KIMBERLY JACKSON**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JUSTIN F. ROEBEL**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

THOMAS DILLMAN,                          )
                                         )
    Appellant-Defendant,                 )
                                         )
        vs.                              )    No. 53A01-1303-CR-112
                                         )
STATE OF INDIANA,                        )
                                         )
    Appellee-Plaintiff.                  )

APPEAL FROM THE MONROE CIRCUIT COURT
The Honorable Mary Ellen Diekhoff, Judge
Cause No. 53C05-1012-FC-1207

**December 18, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

Thomas Dillman challenges the terms of his sentence for Class C felony failure to return to the scene of an accident resulting in death. He also claims the trial court erred in ordering court costs and a public-defender fee to be paid from his cash bond. We affirm Dillman's eight-year sentence. We conclude, however, that Dillman is entitled to additional jail-time credit and the court erred when it suspended Dillman's driver's license for ten years. And because there was no bond agreement in place, the court erred when it ordered court costs and a public-defender fee to be paid from Dillman's bond. We affirm in part and reverse in part.

**Facts and Procedural History**

Almost exactly three years ago, in the early hours of December 18, 2010, Dillman drove some friends home from a party in Bloomington.[1] Dillman came across a Jeep stopped in the road. The Jeep belonged to twenty-five-year-old Lacey Deckard, who had stopped to help a car that was stuck on a sheet of ice. Although Dillman tried to stop, he hit Lacey, who was standing near her Jeep. Tr. p. 162. Lacey was pinned under the truck Dillman was driving. Dillman and his friends tried unsuccessfully to free Lacey from under the truck. It was later determined that Lacey died at the scene.

Dillman fled the scene, running into the woods. *Id.* at 165. He later returned, but no one was there. Dillman turned himself in to authorities the next day.

---

[1] The record suggests that during the investigation, police and witnesses said that one of Dillman's friends, rather than Dillman, was driving when the accident occurred. *See* Tr. p. 164, 167. However, Dillman maintained he drove the truck on the night in question. *Id.* at 167 ("I remember driving, I'm sure I was the driver."), 174 ("[I] was driving. I know I was driving.").

The State charged Dillman with Class C felony failure to return to the scene of an accident resulting in death. Dillman paid a $500 cash bond and was released on December 31.

In February 2011, Dillman was arrested and charged with Class D felony resisting law enforcement and Class A misdemeanor operating a motor vehicle while intoxicated. His bond was revoked.

Two years later, Dillman entered into a plea agreement with the State that resolved all his pending criminal matters. Dillman pled guilty to Class C felony failure to return to the scene of an accident resulting in death and Class A misdemeanor operating a motor vehicle while intoxicated. His felony resisting-law-enforcement charge and a probation-revocation petition were dismissed. The plea agreement called for consecutive sentences but otherwise left sentencing to the trial court's discretion.

At sentencing, the trial court summarized the evidence and arguments of counsel, particularly noting Dillman's assertion that he needed treatment for substance-abuse issues:

> So the question becomes what happened that night [Lacey was killed]? Were you intoxicated? You say no. Were you high? You say no. Had you been drinking? You say no. Were you sober? You say yes. If that's the case Mr. Dillman then purposeful incarceration isn't going to help you. It's for people who are addicted to things such that they cannot control their behavior. According to your testimony that wasn't the case. According to your testimony both in the pre-sentence investigation and here this afternoon that was not the problem.

*Id.* at 189. The court also noted Dillman's past felony convictions for theft and burglary, misdemeanor convictions for operating a motor vehicle while intoxicated, possession of alcohol in a vehicle as a minor, conversion, and criminal recklessness, and a juvenile

3

adjudication for possession of marijuana.  The court reasoned that in his previous interactions with the criminal-justice system, Dillman had been given opportunities for rehabilitation:

> I would also submit to you Mr. Dillman[,] that in your past dealings with the criminal-justice system[,] the criminal-justice system tried to help with that.  Put you on probation, which you failed.  Sent you to programs, tried to help you, worked with you, dealt with you, listened to you when you said, "it's because of my addiction, it's because I need help, it's because I need to work on this."  And here we are.  The really disturbing thing to the court is this, that those things that you now argue would be helpful to you, you didn't take advantage of when they were offered to you.

*Id.* at 189-90.

The court sentenced Dillman to 364 days for Class A misdemeanor operating a motor vehicle while intoxicated.  Dillman received the maximum eight-year sentence, all executed, for Class C felony failure to return to the scene of an accident resulting in death.  As dictated by the plea agreement, the court ordered the sentences to be served consecutively.  The court awarded Dillman 280 credit days.  *Id.* at 198.  The court suspended Dillman's driver's license for two years for his misdemeanor conviction and ten years for his felony conviction.  The court also imposed court costs and a public-defender fee to be paid from Dillman's cash bond.

Dillman now appeals.

**Discussion and Decision**

Dillman makes four arguments on appeal: (1) the trial court erred in sentencing him on the Class C felony; (2) he is entitled to additional jail-time credit; (3) the court erred when it suspended his driver's license for ten years; and (4) the court erred in ordering court costs and a public-defender fee to be paid from Dillman's cash bond.

4

## I. Class C Felony Sentence

### A. Abuse of Discretion

Dillman argues that the trial court abused its discretion in assigning his remorse and guilty plea little, if any, mitigating weight.

Sentencing decisions rest within the sound discretion of the trial court. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). So long as the sentence is within the statutory range, it is subject to review only for an abuse of discretion. *Id.* An abuse of discretion will be found where the decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.*

A trial court may abuse its discretion in a number of ways, including: (1) failing to enter a sentencing statement at all; (2) entering a sentencing statement that includes aggravating and mitigating factors that are unsupported by the record; (3) entering a sentencing statement that omits reasons that are clearly supported by the record; or (4) entering a sentencing statement that includes reasons that are improper as a matter of law. *Id.* at 490-91. Because the trial court no longer has any obligation to weigh aggravating and mitigating factors against each other when imposing a sentence, a trial court cannot now be said to have abused its discretion in failing to properly weigh such factors. *Id.* at 491. If a trial court abuses its discretion, "remand for resentencing may be the appropriate remedy if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Id.*

Dillman first contends that the trial court "appeared to find that Dillman's [] operating a motor vehicle while intoxicated [arrest] while the [Class C felony failure-to-return] case was pending negated Dillman's claim of remorse." Appellant's Br. p. 11. Dillman argues that he "was an alcoholic who relapsed in the face of tremendous stress," and "suffered significant and continuing stress over [Lacey's] death." *Id.* at 12. The trial court rejected this argument, saying it was "inconceivable and incomprehensible how [Dillman] could be charged with . . . the [Class C] felony offense and then . . . [drink] and drive." Tr. p. 192. And as the trial court noted, Dillman violated the law and the court's order by drinking and driving. We cannot say that the trial court erred by not considering Dillman's expression of remorse to be mitigating. *See Ricci v. State*, 894 N.E.2d 1089, 1095 (Ind. Ct. App. 2008) (a defendant's actions may reflect unfavorably on his capacity for remorse and show diminished acceptance of responsibility), *trans. denied*.

Dillman also argues that the trial court erred by apparently rejecting his guilty plea as a mitigating circumstance. A defendant's guilty plea generally deserves some mitigating weight. *See Anglemyer*, 875 N.E.2d at 220. But our Supreme Court has recognized that a trial court does not necessarily abuse its discretion by failing to recognize a defendant's guilty plea as a significant mitigating circumstance. *Id.* at 221. Instead, a trial court is only required to identify mitigating circumstances that are both significant and supported by the record, and "a guilty plea may not be significantly mitigating when . . . the defendant receives a substantial benefit in return for the plea." *Id.* (citing *Sensback v. State*, 720 N.E.2d 1160, 1165 (Ind. 1999)).

Here, the trial court noted that Dillman received a benefit by pleading guilty—a felony resisting-law-enforcement charge and a probation-revocation petition were dismissed. The dismissal of a felony charge and petition to revoke Dillman's probation was a substantial benefit to Dillman. Moreover, Dillman's guilty plea came two years after he was charged and was likely a pragmatic decision given the weight of the evidence against him. We cannot say the trial court erred in determining his guilty plea was entitled to minimal mitigating weight.[2] *See Wells v. State*, 836 N.E.2d 475, 479 (Ind. Ct. App. 2005) ("[A] guilty plea does not rise to the level of significant mitigation where the defendant has received a substantial benefit from the plea or where the evidence against him is such that the decision to plead guilty is merely a pragmatic one."), *trans. denied*.

The trial court did not abuse its discretion in sentencing Dillman.

### B. Inappropriate Sentence

Dillman also contends his Class C felony sentence is inappropriate in light of the nature of the offense and his character. He asks us to revise his fully executed eight-year sentence to eight years with four years suspended to probation. Appellant's Br. p. 19.

Our rules authorize revision of a sentence "if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of

---

[2] Dillman also challenges the trial court's finding about his knowledge of Lacey's death. Appellant's Br. p. 14. The court said: "You say in the pre-sentence report that you find out some time later that she died instantly, so you didn't know that then and you left." Tr. p. 191. It is difficult to determine from this statement exactly what knowledge the court was attributing to Dillman. But even if we assume that this finding was error, it was harmless. We will not remand for resentencing unless we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered the reason at issue. Because the trial court concluded that Dillman's expression of remorse and guilty plea were entitled to little, if any mitigating weight, and found Dillman's criminal history to be aggravating, we can say with confidence that the trial court would have imposed the same sentence without considering Dillman's knowledge of Lacey's death.

7

the offense and the character of the offender." Ind. Appellate Rule 7(B). "[A] defendant must persuade the appellate court that his or her sentence has met this inappropriateness standard of review." *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case. *Id.* at 1224.

A person who fails to return the scene of accident resulting in death commits a Class C felony. Ind. Code § 9-26-1-8. A person who commits a Class C felony shall be imprisoned for a fixed term of between two and eight years, with a four-year advisory sentence. Here, the trial court sentenced Dillman to the maximum term of eight years.

The nature of this offense is serious. After striking Lacey and pinning her under the truck he was driving, Dillman and his friends tried unsuccessfully to free Lacey. Then they fled the scene. Dillman, specifically, ran into the nearby woods, leaving Lacey's body under the truck. It was later determined that Lacey died at the scene. Nothing in the record indicates that Dillman's sentence is inappropriate in light of the nature of this offense.[3]

---

[3] Dillman argues that he does not deserve the maximum sentence because he and his friends tried to free Lacey from under the truck. He also appears to minimize his flight from the scene by saying Lacey was already dead when he left. *See* Appellant's Br. p. 17 ("Only after one of the passengers crawled under the tuck and signaled that [Lacey] was dead did Dillman leave.").

8

Nor is Dillman's sentence inappropriate in light of his character. His criminal history includes felony convictions for theft and burglary and a previous misdemeanor conviction for operating a vehicle while intoxicated. Dillman has additional misdemeanor convictions for possession of alcohol in a vehicle as a minor, conversion, and criminal recklessness, and a juvenile adjudication for possession of marijuana. He has been on probation four times, and he violated his probation each time. And after being charged with Class C felony failure to return to the scene of an accident resulting in death, Dillman was arrested for operating a vehicle while intoxicated. Finally, Dillman has a long history of drug and alcohol abuse. As the trial court explained, despite his previous contacts with the criminal-justice system and opportunities for rehabilitation, Dillman has not been deterred from criminal activity. His character does not warrant a reduction in his sentence.

After due consideration of the trial court's decision, we cannot say that Dillman's eight-year sentence is inappropriate in light of the nature of the offense and his character.

## II. Jail-Time Credit

Dillman next contends that he is entitled to thirteen additional jail-time credit days.

Indiana Code section 35-50-6-4(a) provides: "A person . . . imprisoned for a crime or imprisoned awaiting trial or sentencing is initially assigned to Class I." Section 35-50-6-3(a) also provides: "A person assigned to Class I earns one (1) day of credit time for

---

These arguments are not persuasive. Put simply, Dillman and his friends were not in a position to gauge Lacey's medical state or determine that nothing could be done for her. And as the driver of the truck that struck and killed Lacey, Dillman had a legal responsibility to remain at the scene and speak with authorities. Lacey's death did not resolve him of this responsibility.

9

each day the person is imprisoned for a crime or confined awaiting trial or sentencing." Because presentence jail-time credit is a matter of statutory right, a trial court generally does not have discretion in awarding or denying such credit. *Molden v. State*, 750 N.E.2d 448, 449 (Ind. Ct. App. 2001), *reh'g denied.* However, there is a limit to this statutory right. When a defendant receives consecutive sentences, the credit time may only be applied against the total or aggregate of the sentences. *Jones v. State*, 775 N.E.2d 322, 333 (Ind. Ct. App. 2002) (citation omitted).

The trial court awarded Dillman 280 credit days. Dillman later filed a pro se motion alleging he was entitled to thirteen additional jail-time credit days, which was denied. On appeal, Dillman argues that the trial court erred by denying his motion. He points to jail records showing that he was incarcerated from December 19, 2010—the day he turned himself in for failure to return to the scene of an accident resulting in death— through December 31, 2010, the day he posted bond. *See* Appellant's App. p. 102.

The State concedes "that the trial court's calculation of jail-credit time does not appear to have included credit for the initial period of incarceration." Appellee's Br. p. 13. Yet the State maintains Dillman is not entitled to credit for these days because he "has not presented this Court with an adequate record for review." *Id.* We disagree. The jail records in the appendix show that Dillman was incarcerated from December 19 through December 31. *See* Appellant's App. p. 102. And the State's attempt to discredit this evidence by saying it is unverified is not persuasive—the State does not dispute the fact that Dillman turned himself in to authorities on December 19, the day after Lacey's death, and was released on bond on December 31. The record also shows that Dillman

10

was not credited for these days in any other case. Thus, Dillman has a statutory right to credit for these days, and on remand, we instruct the trial court to enter an order awarding Dillman such credit.

### III. Driver's-License Suspension

Dillman next challenges his ten-year license suspension for Class C felony failure to return to the scene of an accident resulting in death.[4] As the State concedes, Appellee's Br. p. 11, the applicable statute authorizes a six-month license suspension for this offense. *See* Ind. Code § 9-30-4-6(b)(5)(d)(1). The trial court erred in imposing a ten-year suspension. We remand with instructions to impose the six-month suspension permitted by statute.

### IV. Bond

Finally, Dillman argues that the trial court erred by ordering court costs and a public-defender fee to be paid from his $500 cash bond because he never executed an agreement allowing the trial court to retain any portion of his bond.

Indiana Code section 35-33-8-3.2(a)(1) provides:

> If the court requires the defendant to deposit cash or cash and another form of security as bail, the court may require the defendant and each person who makes the deposit on behalf of the defendant to execute an agreement that allows the court to retain all or a part of the cash to pay publicly paid costs of representation and fines, costs, fees, and restitution that the court may order the defendant to pay if the defendant is convicted.[5]

---

[4] Dillman's license was also suspended for two years for his Class A misdemeanor operating a motor vehicle while intoxicated conviction; he does not challenge this suspension.

[5] Section 35-33-8-3.2(a)(1) also provides that a defendant must pay the fee required by subsection (d), which in turn provides:

> (d) Except as provided in subsection (e), the clerk of the court shall:
>     (1) collect a fee of five dollars ($5) from each bond or deposit required under subsection (a)(1); and

11

The State argues that Dillman failed to produce the bond agreement; thus, his argument is waived. But Dillman's argument is that no such agreement exists. And the CCS shows no entry of a bond agreement; therefore, we must conclude that there was none. The trial court erred when it ordered court costs and a public-defender fee to be paid from Dillman's cash bond in the absence of an agreement to that effect.

Affirmed in part and reversed in part.

BARNES, J., and CRONE, J., concur.

---

(2) retain a fee of five dollars ($5) from each deposit under subsection (a)(2). The clerk of the court shall semiannually remit the fees collected under this subsection to the board of trustees of the Indiana public retirement system for deposit in the special death benefit fund. The fee required by subdivision (2) is in addition to the administrative fee retained under subsection (a)(2).

Dillman acknowledges that he must pay the subsection (d) fee. *See* Appellant's Br. p. 26.