Altice, Judge.
Case Summary
Vicki Clemons appeals her conviction for Level 5 felony battery with a deadly weapon. On appeal, Clemons argues that the trial court committed fundamental error when it did not instruct the jury on the legal definition of ■‘“serious bodily injury” and that a probation condition, prohibiting her from associating .with anyone of bad character or reputation was impermissibly vague.
We affirm in part, reverse in part, and remand for further proceedings.
Pacts & Procedural History
Clemons and her neighbor, Margaret Willoughby, did not-get along. On July 12, 2015, Willoughby, her two young children, and fífteen-year-old Casee Johnston were taking a walk to the neighborhood. As they neared Clemons's home, Willoughby observed Clemons standing on the porch. When Clemons spotted the group, she approached Willoughby and said that she was going to teach her a lesson. Clemons struck Willoughby in the head with a metal rod and said that she was “gonna end [Willoughby’s] f**king life[.]” Transcript at 82. Willoughby put up her hand to block a second blow, and Clemons “hit. [her] right across [her] wrist.” Id, When Wil-loughby turned around to walk away, Clemons hit her across her back.
 Following this incident, Clemons returned home, and Willoughby called ,911. One of the responding' officers observed that Willoughby had a large bump on the outside of her left arm and that her injuries were the type that he would expect to see in “a car accident or something.” Id. at 117. Willoughby suffered a fractured wrist. She testified that, the injury “would .shoot pain all the way up through [her] arm. It was painful.. I only slept two or three hours that night cause it. hurt that bad.” Id. at 90. .
On July 28, 2015, the State charged Clemons with Level 5 felony battery with a deadly weapon and Level 6 felony battery resulting in moderate bodily injury, A jury trial took place on October 11, 2016. During trial, the trial court provided both parties with a copy of the proposed jury instructions to r'eviéw; neither party objected to the proposed instructions. The trial court’s final jury instructions did not include an instruction defining the phrase “serious bodily injury.” During trial, Wil-loughby testified that the rod was “real heavy” and “long and gray, and it had two black things on, like each end of it. And I would say it was a really, really hard aluminum. Maybe a light metal.” Id. at 87-88.
The jury found Clemons guilty as charged. The trial court merged the Level 6 felony battery resulting in moderate bodily injury conviction into the Level 5 felony *107 battery with a deadly weapon due to double jeopardy concerns. The trial court then imposed a two-year sentence, fully suspended to probation, for the Level 5 felony conviction. One of the standard conditions of probation provided: “You shall not associate with any person of bad character or reputation or with any person who is likely to influence you to commit a crime or crimes.” Appellant’s Appendix Vol. II at 117. Clemons now appeals.
Discussion & Decision
1. Jury Instruction
 Clemons argues that the jury should have been instructed on the statutory definition of “serious bodily injury.” See Ind. Code § 35-31.5-2-292. Clemons acknowledges, however, that she did not object to the jury instructions at trial and that she must consequently establish fundamental error in order to prevail on her claim of instructional error. See Hall v. State, 937 N.E.2d 911, 913 (Ind. Ct. App. 2010) (noting that failure to object to jury instructions at trial results in waiver of the issue on appeal unless the instruction is so flawed that it constitutes fundamental error). Our Supreme Court has described the fundamental error standard as a “daunting” one, applicable only in egregious circumstances. Knapp v. State, 9 N.E.3d 1274, 1281 (Ind. 2014). “To qualify as fundamental error, ‘an error must be so prejudicial to the rights of the defendant as to make a fair trial impossible’ and must ‘constitute a blatant violation of basic principles, the harm or potential for harm must be substantial, and the resulting error must deny the defendant fundamental due process.’ ” Absher v. State, 866 N.E.2d 350, 355 (Ind. Ct. App. 2007) (quoting Benson v. State, 762 N.E.2d 748, 755 (Ind. 2002)). The fundamental error exception is extremely narrow and “reaches only errors that are so blatant that the trial judge should have taken action sua sponte.” Id.
To prove that Clemons committed battery with a deadly weapon, the State had to prove that Clemons knowingly or intentionally touched another person in a rude, insolent, or angry manner with a deadly weapon, Ind. Code § 35-42-2-1(g)(2). A “deadly weapon” is, in relevant part, any “material that in the manner it: (A) is used; (B) could ordinarily be used; or (C) is intended to be used; is readily capable of causing serious bodily injury.” I.C. § 35-31.5-2-86(a)(2). Thus, to decide whether the metal rod constituted a deadly weapon, the jury had to determine whether it was readily capable of causing serious bodily injury. See Whitfield v. State, 699 N.E.2d 666, 670 (Ind. Ct. App. 1998) (stating that whether sufficient evidence exists to establish that an object constitutes a deadly weapon “is determined by looking to whether the weapon had the actual ability to inflict serious injury”). “Serious bodily injury” is statutorily defined as follows:
“Serious bodily injury” means bodily injury that creates a substantial risk of death or that causes: • ‘ ■
(1) serious permanent disfigurement;
(2) unconsciousness;
(3) extreme pain;
(4) permanent or protracted loss or impairment of the function of a bodily member or organ; or
(5) loss of á fetus.
I.C. § 35-31.5-2-292.
The jury received an instruction on the definition of “deadly weapon” but not on the definition of “serious bodily injury.” Because a deadly weapon is defined as one capable- of inflicting serious bodily injury, an instruction on the definition of the latter phrase would certainly have been desirable. We note, however, that serious bodily injury is not an element of the challenged, offense. Rather, the focus is on *108 the instrumentality used and its potential for harm, not the harm actually inflicted.
 When determining whether an element of an offense has been proven, the jury may rely on its collective common sense and knowledge acquired through everyday experiences—indeed, that is precisely what is expected of a jury. Halsema v. State, 823 N.E.2d 668, 673-74 (Ind. 2005). “The trial court has a duty to give further instructions defining words used in other instructions only if the words are of a technical or legal meaning normally not understood by jurors unversed in the law.” Martin v. State, 262 Ind. 232, 314 N.E.2d 60, 70 (1974). We do not doubt that in some contexts, “serious bodily injury” may require further definition. But whatever its precise statutory definition, the phrase is quite readily understood by the average layman to mean some injury short of death. See Comer v. State, 428 N.E.2d 48, 55 (Ind. Ct. App. 1981) (noting the likelihood that “in common usage, ‘serious bodily injury’ refers to something short of a fatal injury or mortal wound”).[1]
Furthermore, it is common sense that a metal rod used in this manner is capable of causing death, and as such, it is logically inescapable that such a weapon is also capable of causing serious bodily injury. Thus, even in the absence of an instruction on the statutory definition of that phrase, the jury was able to determine based on its collective common sense and everyday experiences that the metal rod Clemons used to batter Willoughby was readily capable of causing serious bodily injury. Had Clemons used some other, less obviously lethal weapon—for example, a book or a pencil—the failure to define serious bodily injury might have amounted to fundamental error. But under the circumstances of this case, we cannot conclude that allowing the jury to reason that a metal rod is a deadly weapon without such an instruction constituted fundamental error.
2. Probation Condition
 Clemons also argues that a probation condition prohibiting her from associating with people of bad character or reputation or with people likely to influence her to commit a crime was impermis-sibly vague. We agree., “Probation is a criminal sanction where a convicted defendant specifically agrees to accept conditions upon his behavior in lieu of imprison *109 ment.” Bratcher v. State, 999 N.E.2d 864, 873 (Ind. Ct. App. 2013). A trial court has broad discretion to impose conditions of probation. Hevner v. State, 919 N.E.2d 109, 113 (Ind. 2010). The court’s discretion is limited by the principle that the conditions imposed on-the defendant must be reasonably related to the treatment of the defendant and the protection of public safety. Bratcher, 999 N.E.2d at 873. “A probationer has a due process right to conditions of supervised release that are sufficiently clear to inform him [or her] of what conduct will result in his [or her] being returned to prison.” McVey v. State, 863 N.E.2d 434, 447 (Ind. Ct. App. 2007), tram, denied.
Although we acknowledge that -this condition and others like it are commonly used throughout the state, we agree with Clemons that it is unreasonably vague. The condition does not define what “associate” or “bad character or reputation” mean in this context, nor is it clear how to identify a person who could “influence” Clemons to commit a crime. Because each of the terms in this condition is subjective, the condition fails to inform Clemons what conduct would subject her to revocation of her probation. Cf. Hunter v. State, 883 N.E.2d 1161, 1163-64 (Ind. 2008) (finding a condition prohibiting the probationer from having “contact” with children and requiring the probationer to report any “incidental contact” with children to his probation officer to be impermissibly vague); Foster v. State, 813 N.E.2d 1236, 1237-39 (Ind. Ct. App. 2004) (finding a condition prohibiting a probationer from possessing “pornographic or sexually explicit materials” to be impermissibly vague). We therefore instruct the trial court to clarify the condition prohibiting Clemons from associating with any person of bad character or reputation or likely to influence her to commit a crime. We also encourage the trial court to ensure its probation conditions are appropriately specific, in this and all- cases in the future.
Judgment affirmed in part, reversed in part, and remanded with instructions.
Bailey, J., concurs.
Baker, J., dissents in part and concurs in part with opinion.

. In Comer, 428 N.E.2d at 55, this court found no error in the refusal of a tendered instruction on the lesser included offense of criminal recklessness because the defendant failed to tender an additional instruction defining the phrase “serious bodily injury,’’ which was used in the criminal recklessness statute and proposed instruction. At the time that case was decided, however, "serious bodily injury” was defined to include bodily injury causing death. The court reasoned that it . would be "highly speculative to maintain that laymen would define serious bodily injury in the manner that our Legislature has seen fit to do” because “[i]t is doubtful that the common usage of the phrase 'serious bodily injury’ includes the concept of death.” Id. The current definition of serious bodily injury has eliminated this potential source of confusion because it no longer includes injury causing death. Thus, we do not believe Corner supports Clemons’s argument on appeal.
We also find Kimbrough v. State, 911 N.E.2d 621, 634 (Ind. Ct. App. 2009), to be legally and factually distinguishable. In that case, the defendant Was convicted of battery .with a deadly weapon and argued on appeal that it was fundamental error to instruct the jury on the definition of “serious bodily injury” because he was not charged with causing such injury. This court concluded that the instruction was proper because the jury had to determine whether the weapon (a wooden table leg) was readily capable of causing serious bodily injury, and "the jury could not make such a determination without knowing the definition of serious bodily injury.” .Id. The court did not address whether the failure to give such an instruction would have amounted to fundamental error.