## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 28 2018, 5:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

P. Stephen Miller
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Robert L. Allen,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

March 28, 2018

Court of Appeals Case No.
02A03-1703-CR-481

Appeal from the Allen Superior
Court

The Honorable Frances C. Gull,
Judge

Trial Court Cause No.
02D04-1610-F5-312

**Pyle, Judge.**

# Statement of the Case

Robert L. Allen ("Allen") appeals his convictions for Level 5 felony domestic battery[1] and Level 6 felony domestic battery.[2] He argues that: (1) the trial court erred when it denied his motion for directed verdict on his Level 5 felony domestic battery charge; (2) the trial court committed fundamental error when it instructed the jury; and (3) his convictions violated the continuous crime doctrine. Because we are not persuaded by Allen's arguments, we affirm the trial court's decision.

We affirm.

# Issues

1. Whether the trial court erred when it denied Allen's motion for directed verdict.

2. Whether the trial court committed fundamental error when it instructed the jury.

3. Whether Allen's convictions violated the continuous crime doctrine.

# Facts

In October of 2016, Allen had been living with his girlfriend, Stephanie Phillips ("Phillips") for two months. On the night of October 25, Phillips was in bed when Allen came into the bedroom and "just went off" and began "screaming

---

[1] IND. CODE § 35-42-2-1.3(c)(2).

[2] I.C. § 35-42-2-1.3(b)(3).

and yelling" at her. (Tr. Vol. 2 at 162). Phillips had a butcher knife beside her bed, and Allen picked up the knife and began "swinging it around at [Phillips] and threatening [her] life with [it]." (Tr. Vol. 2 at 162). Allen also punched Phillips and put her into a chokehold.

When Phillips escaped to the living room, Allen pinned her against the wall and on the floor by placing a baseball bat that she normally kept by the front door "on her shoulders." (Tr. Vol. 2 at 180). He also choked her with the baseball bat. In total, Allen's attack lasted for "over an hour." (Tr. Vol. 2 at 165). Phillips later described that Allen "just kept coming at [her] . . . throwing punches and swinging fists and swinging the bat around." (Tr. Vol. 2 at 165). At one point, Allen choked Phillips' throat with his hands.

When Allen stopped attacking Phillips, she spent half an hour asking him to let her leave to take care of the blood on her face. Finally, Allen let her leave, and she went to a friend's house to call the police. An officer that arrived to the scene observed that Phillips had a cut over her left eye, blood on her face, "fresh red marks," bruising on her face and neck, and a cut on one of her hands. (Tr. Vol. 2 at 205). He also found a baseball bat that had blood on it in the hallway of Phillip's house and a wet rag with blood on it in the bathroom.

On October 31, 2016, the State charged Allen with Count 1, Level 5 felony domestic battery; Count 2, Level 6 felony domestic battery; and Count 3, Level 6 felony strangulation. The trial court held a jury trial on January 11 and 12, 2017. At the conclusion of the presentation of evidence, Allen moved for a

directed verdict on his Level 5 felony domestic battery charge. He argued that the State had not presented any evidence that the baseball bat he had used qualified as a deadly weapon as required to convict him of the charge. The trial court denied the motion, reasoning that the question of whether the baseball bat qualified as a deadly weapon was an issue of fact for the jury to decide.

[7] The trial court then instructed the jury, and Allen did not object to the jury instructions. The jury subsequently found Allen guilty as charged. The trial court entered judgments of conviction on Counts 1 and 2 but vacated Count 3 on double jeopardy grounds. The trial court sentenced Allen to six (6) years on Count 1 and two (2) years on Count 2, with the sentences to be served consecutively. Allen now appeals.

# Decision

[8] On appeal, Allen argues that: (1) the trial court erred when it denied his motion for directed verdict; (2) the trial court committed fundamental error when it instructed the jury; and (3) his convictions violated Indiana's continuous crime doctrine. We will address each of these arguments in turn.

## 1. Directed Verdict

[9] First, Allen asserts that the trial court erred when it denied his motion for directed verdict on his Level 5 felony domestic battery charge. Indiana Trial Rule 50(A) governs motions for directed verdicts, which are also called motions for judgment on the evidence. Trial Rule 50(A) provides:

> Where all or some of the issues in a case tried before a jury . . .
> are not supported by sufficient evidence or a verdict thereon is
> clearly erroneous as contrary to the evidence because the
> evidence is insufficient to support it, the court shall withdraw
> such issues from the jury and enter judgment thereon . . . .

When a defendant moves for a directed verdict, the court is required to withdraw the issue from the jury if: (1) the record is devoid of evidence on one or more elements of the offense; or (2) the evidence presented is without conflict and subject to only one inference, which is favorable to the defendant. T.R. 50(A); *Garcia v. State*, 979 N.E.2d 156, 157 (Ind. Ct. App. 2012).

[10] On appeal, we use the same standard of review as the trial court in determining the propriety of a directed verdict. *Garcia*, 979 N.E.2d at 158. We must "'view the evidence in a light most favorable to the party against whom [a directed verdict] would be entered.'" *Id.* (quoting *State v. Taylor*, 863 N.E.2d 917, 919 (Ind. Ct. App. 2007)). We may "'not invade the province of the jury by weighing the evidence presented or the credibility of witnesses.'" *Id.* (quoting *Taylor*, 863 N.E.2d at 919). A defendant's motion for directed verdict should not be granted if the State presents a prima facie case. *Id.*

[11] Here, Allen argues that the trial court should have granted his motion for directed verdict because there was no evidence that he used a deadly weapon as required for a Level 5 felony domestic battery conviction. Specifically, he contends that there was no evidence that the baseball bat he was charged with using constituted a deadly weapon.

[12] Under INDIANA CODE § 35-42-2-1.3, a person commits domestic battery if he "knowingly or intentionally . . . touches a family or household member in a rude, insolent, or angry manner[.]" The offense is a Level 5 felony if it is committed "with a deadly weapon." I.C. § 35-42-2-1.3(c)(2). INDIANA CODE § 35-31.5-2-86(a)(2) defines "deadly weapon" to mean, among other definitions, a "weapon, device . . . or other material that in the manner it: (A) is used; (B) could ordinarily be used; or (C) is intended to be used; is readily capable of causing serious bodily injury." "Serious bodily injury," in turn, is "bodily injury that creates a substantial risk of death or that causes: (1) serious permanent disfigurement; (2) unconsciousness; (3) extreme pain . . . ." I.C. § 35-31.5-2-292.

[13] We have previously noted that the definition of deadly weapon is broad and fact-sensitive. *Burgh v. State*, 79 N.E.3d 955, 957 (Ind. Ct. App. 2017). We have repeatedly stated that whether an object is a "deadly weapon" on a given set of facts is determined from the nature of the object, the manner of its use, and the circumstances of the case. *Id.* We do not consider the original purpose of the object but, rather, the manner in which the defendant actually used it. *Id.* (finding that pavement was a deadly weapon when the defendant struck the victim's head on the pavement). In *Craeger v. State*, 737 N.E.2d 771 (Ind. Ct. App. 2000), *trans. denied*, we found that a baseball bat was a deadly weapon when the defendant used it to strike a person and a door. Likewise, in *Corder v. State*, 467 N.E.2d 409, 412 (Ind. 1984), our supreme court held that a bat was a deadly weapon when the defendant struck a person across the head with it.

[14] Based on this standard and precedent, we conclude that there was sufficient evidence that Allen used his baseball bat in a manner that it constituted a deadly weapon. Phillips testified that Allen choked her with the baseball bat and that he "just kept coming at [her] . . . swinging the bat around." (Tr. Vol. 2 at 165). In the manner that Phillips used the bat, it was clearly "readily capable of causing serious bodily injury" as defined in INDIANA CODE § 35-31.5-2-292.

[15] Because there was sufficient evidence that Allen used the baseball bat in a manner that it constituted a deadly weapon, the record was not devoid of evidence of that element of his offense. Therefore, we conclude that the trial court did not err when it denied Allen's motion for directed verdict. *See Garcia*, 979 N.E.2d at 157 (noting that the court is required to withdraw the issue from the jury if the record is devoid of evidence on one or more elements of the offense.

## 2. Jury Instructions

[16] In a related argument, Allen asserts that the jury was not able to make the factual determination regarding whether his baseball bat constituted a deadly weapon because the trial court failed to properly instruct the jury. Specifically, he contends that, although the trial court's final jury instructions included the definition of "deadly weapon," the trial court did not include a definition of "serious bodily injury," which is part of the definition of deadly weapon. *See* I.C. § 35-31.5-2-86(a)(2).

[17]    In order to preserve an objection to a trial court's jury instructions for appeal, a defendant must generally make a contemporaneous objection to the instruction. *McKinley v. State*, 45 N.E.3d 25, 28 (Ind. Ct. App. 2015), *reh'g denied*, *trans. denied.*  Because Allen failed to object to the trial court's jury instructions during trial, he concedes that he must establish that the trial court's failure to instruct the jury on the definition of "serious bodily injury" was a fundamental error. The fundamental error exception to the contemporaneous objection rule is extremely narrow and provides the defendant with a remedy only when an error constitutes a blatant violation of basic due process principles and the harm or potential for harm is substantial.  *Kadrovach v. State*, 61 N.E.3d 1241, 1243 (Ind. Ct. App. 2016), *trans. denied.*  When determining whether a fundamental error has occurred with respect to an allegedly improper jury instruction, we do not examine the instruction in isolation but rather in the context of all relevant information presented to the jury, including closing argument and other instructions.  *Id.*  "'[W]here all such information, considered as a whole, does not mislead the jury as to the correct understanding of the law,' there is no due process violation and thus no fundamental error."  *Id.* (quoting *McKinley*, 45 N.E.3d at 28-29).

[18]    In *Clemons v. State*, 83 N.E.3d 104, 108 (Ind. Ct. App. 2017), *trans. denied*, we recently addressed the issue of whether a trial court committed fundamental error by instructing the jury on the definition of "deadly weapon" but not the definition of "serious bodily injury."  There, we noted that "serious bodily injury" was not an element of the challenged offense—battery with a deadly

weapon—even though it was a part of the definition of "deadly weapon." *Id.* at 107. As a result, "the focus [was] on the instrumentality used and its potential for harm, not the harm actually inflicted." *Id.* at 108.

[19] As for the jury's ability to determine whether an instrumentality could inflict serious bodily injury, absent a definition of serious bodily injury, we noted that:

> When determining whether an element of an offense has been proven, the jury may rely on its collective sense and knowledge acquired through everyday experiences—indeed, that is precisely what is expected of a jury. The trial court has a duty to give further instructions defining words used in other instructions only if the words are of a technical or legal meaning normally not understood by jurors unversed in the law. We do not doubt that in some contexts, "serious bodily injury" may require further definition. But whatever its precise statutory definition, the phrase is quite readily understood by the average layman to mean some injury short of death.

*Id.* We concluded that the jury was able to determine "based on its collective common sense and everyday experiences" that the metal rod that the defendant used to batter his victim in *Clemons* was a deadly weapon capable of causing serious bodily injury. *Id.*

[20] Likewise, we conclude here that the jury was able to use its collective common sense and everyday experiences to be able to determine that the baseball bat was capable of causing serious bodily injury. As in *Clemons*, serious bodily injury was not an element of Allen's offense. The jury needed only to determine "the instrumentality used and its potential for harm." *Id.* Because the jury was able

to do so through common sense, the trial court did not commit fundamental error by failing to instruct the jury on the definition of serious bodily injury. *See, e.g., Clemons*, 83 N.E.3d at 108.

### 3. Continuous Crime Doctrine

[21] Allen also argues that his two domestic battery convictions violated the continuous crime doctrine because they were so close in time that they amounted to only a single chargeable crime. The continuous crime doctrine establishes that "actions that are sufficient to constitute separate criminal offenses may be so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction." *Pugh v. State*, 52 N.E.3d 955, 970 (Ind. Ct. App. 2016), *trans. denied*. The doctrine applies "only where a defendant has been charged multiple times with the *same* 'continuous' offense." *Hines v. State*, 30 N.E.3d 1216, 1220 (Ind. 2015) (emphasis added) (holding that the continuous crime doctrine did not apply where the defendant was charged with battery and criminal confinement, not multiple charges of battery nor multiple charges of criminal confinement, because battery and criminal confinement were not the same offense).

[22] Here, Count 1 of the charging information alleged that Allen "did[,] while armed with a deadly weapon, to wit: a baseball bat, knowingly or intentionally touch Stephanie Phillips, who is a family or household member, in a rude, insolent, or angry manner . . . ." (App. Vol. 2 at 14). Count 2 of the charging information alleged that he "did knowingly or intentionally touch[] Stephanie

Phillips, who is a family or household member, in a rude insolent or angry manner resulting in moderate bodily injury . . . ." (App. Vol. 2 at 15). Accordingly, Allen was charged with two distinct offenses—committing domestic battery with his hands and causing moderate bodily injury and, separately, committing domestic battery with a deadly weapon, a baseball bat. These were two separate and distinct offenses that occurred in different locations—the bedroom and living room—over the course of an hour. The continuous crime doctrine did not apply.[3]

[23] Affirmed

May, J., and Brown, J., concur.

---

[3] Similarly, Allen argues that his convictions violated the federal constitutional prohibition on double jeopardy because they were two punishments for a single offense arising from one set of operative circumstances. However, this argument also fails because Allen was convicted of two distinct offenses. Under federal law, two offenses are different, for double jeopardy purposes, whenever each contains an element that the other does not. *Lewis v. U.S.*, 523 U.S. 155, 176 (1998). Here, Allen's Level 5 felony domestic battery charge contained an element that he used a deadly weapon, and his Level 6 felony domestic battery charge contained an element that his battery resulted in moderate bodily injury. I.C. § 35-42-2-1.3(c)(2); I.C. § 35-42-2-1.3(b)(3). Thus, they were distinct offenses, and his convictions did not violate the prohibition against double jeopardy.